IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KENNETH E. STEWART,
      Petitioner,

vs.                        Case No.:  3:09cv452/LAC/EMT

KENNETH S. TUCKER,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 and memorandum in support thereof (docs. 12, 13).  Respondent filed an answer and relevant portions of the state court record (doc. 24).  Petitioner filed a reply (doc. 29).

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 24).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 04-4181, with robbery (Ex. A at 2).  Petitioner entered a written plea and sentencing recommendation agreement, pursuant to which he agreed to enter a "straight up" nolo contendere plea to the robbery charge and a violation of probation charge ("VOP") in Case No. 03-

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 24).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

2493, with no negotiated sentence and with the understanding that he could receive a maximum sentence of fifteen (15) years on the robbery charge and five (5) years on the VOP (*id.* at 151–55). The court accepted the plea at a hearing on May 9, 2005 (Ex. C at 239–47).   Petitioner was sentenced on August 12, 2005, as a habitual felony offender to a term of ten (10) years of imprisonment on the robbery count, with presentence jail credit of 338 days.  He was sentenced to a concurrent term of 27.6 months on the VOP, with presentence jail credit of 340 days (Ex. B).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D05-4250 (Exs. C, D, E, F).  The First DCA affirmed the judgment per curiam without written opinion on February 14, 2007, with the mandate issuing March 2, 2007 (Exs. G, H.).  Stewart v. State, 948 So. 2d 762 (Fla. 1st DCA 2007) (Table).  The First DCA denied Petitioner's motion for rehearing on April 18, 2007 (Exs. I, J).  Petitioner did not seek further review.

On May 9, 2007, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. K).  On September 25, 2007, the state circuit court dismissed the motion without prejudice (Ex. L).

On October 16, 2007, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. M at 1–48).  He subsequently amended his motion with an additional claim.   In an order rendered June 10, 2008, the state circuit court summarily denied Petitioner's original and amended motions (*id.* at 70–126).  Petitioner appealed the decision to the First DCA, Case No. 1D08-3688 (*id.* at 127–28).  The First DCA affirmed the decision per curiam without written opinion on July 20, 2009, with the mandate issuing August 17, 2009 (Exs. Q, R).  Stewart v. State, 13 So. 3d 471 (Fla. 1st DCA 2009) (Table).

Petitioner filed the instant federal habeas action on October 13, 2009 (doc. 1 at 6). Respondent concedes the habeas petition is timely (doc. 24 at 3–4).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for

habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683

(2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").   The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 2010 WL 609844, at *18.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

    A.    Ground One:  "The state trial court erred when it denied the Petitioner's motion to suppress pursuant to a non-consensual warrantless (entry) [sic] and illegal search and seizure."

Petitioner contends the trial court erred in denying his motion to suppress (doc. 12 at 4; doc. 13 at 3–18).  He contends the police coerced his girlfriend, Ms. Toni Marlin, to consent to law enforcement's entering the residence and searching it, by telling her that if she did not cooperate, she would be arrested and her child sent to the Department of Children and Family Services (*id.*). Petitioner contends the entry into the apartment and the search that followed, which resulted in the discovery of money, a bag, and statements by Ms. Marlin and Petitioner, violated the Fourth Amendment (*id.*).  He further contends his confession at the police station should have been suppressed, because it was the fruit of his illegal arrest made as a result of the coerced consent search (doc. 13 at 11–12, 17).  He argues the trial court erred in determining that Ms. Marlin voluntarily consented to the search (*id.* at 3–18).

Petitioner states he raised this claim on direct appeal of his conviction (doc. 12 at 4).  He argues he did not receive a full and fair hearing on the Fourth Amendment issue, because the state court willfully and negligently disregarded clearly established Federal law (doc. 13 at 17–18).  He additionally contends he did not receive meaningful appellate review of the claim, because he did not reserve the right to appeal the denial of the motion to suppress (doc. 29 at 6).

Respondent contends Petitioner's nolo contendere plea waived review of the Fourth Amendment issue for purposes of federal habeas (doc. 24 at 7–9).  Respondent additionally contends this claim is barred by <u>Stone v. Powell</u>, 428 U.S. 465, 494, 96 S. Ct. 3037, 3052, 49 L. Ed. 2d 1067 (1976) (*id.* at 4–7).  Respondent argues further that, notwithstanding the <u>Powell</u> and waiver issues, Petitioner failed to show he is entitled to relief under § 2254(d) (*id.* at 9–11).

The state court record shows that defense counsel filed a pre-trial motion to suppress in the trial court (Ex. A at 24–28).  Counsel sought suppression of evidence seized during the search of the apartment Petitioner shared with his fiancee, Ms. Toni Marlin, on the ground that law enforcement coerced Ms. Marlin to consent to the search (*id.* at 26–28).  Defense counsel argued the fruits of the allegedly illegal search included money, a bag, and statements by Petitioner and Ms. Marlin (*id.*). On February 23 and 25, 2005, the trial court held a two-session evidentiary hearing on Petitioner's motion to suppress (Ex. A at 29–80, 82–122, 123–39).  Five witnesses testified at the hearing, including Petitioner (*id.*).  The court held an additional session on March 4, 2005, for argument on the motion (*id.* at 139–47).  At the close of the third session, the trial court denied the motion after

making explicit and comprehensive findings of fact in relation to Petitioner's Fourth Amendment claim:

Regarding the facts, there was a bank robbery which was reported and law enforcement was dispatched.  There was a K-9 deployed and it tracked and eventually led the officers for multiple jurisdictions, both the Pensacola Police Department and Escambia County Sheriff's Office, to the apartment complex known as Mason Deville about a half mile from the bank, that the officers with their individual handheld tracking units were able to essentially pinpoint to an area of the apartment complex, but not to a specific apartment although they did narrow it down until I believe Officer Gowitzski arrived and when he arrived and used the device to triangulate the tracking device, he was able to see that the device had been on the second floor and then had gone in an unusual motion down through the first floor and then disappeared which to him based upon his training and experience indicated that it had been flushed.  The device is kept with the money that was retrieved.

So there is at that money [sic] certainly coupled with perpetrator of the offense running from the scene and leading the officers to a place a half mile away from the bank a concern regarding the destruction of evidence.  The officers did go to while they were awaiting, they did go to, I think, at least one or two other apartments and made contact because it appeared that from the tracking devices they had it may have indicated that the perpetrator was in one of those apartments.  They got there and the focus then became apartment 46 . . .
. . . .
So focused there.  Officer Porter testified that he went to the door and at that time there weren't many other officers in the immediate area of 46.  But clearly there was quite apparently a show of force with patrol units and all surrounding the specific area here where they all tracked to and there clearly were other, as I said, multiple jurisdictional law enforcement officers on the scene even though at that moment right outside the door to 46 there might not have been a multitude.  There were a few and others were present in the general area.

He said that he knocked on the door a white [sic] female responded but not immediately but after a period of time and after he went from a knock to a pounding on the door, when she answered the door, none of the three law enforcement officers that were there at the moment had their weapons drawn although while one might have been in civilian uniform at least one other was in a law enforcement uniform. And he asked her to step outside.

I know that there is a difference in the testimony regarding just what happened then, but specifically he asked her to step outside and told her they were investigating a robbery.  Asked her if anyone else was present and eventually while she said there was no one besides her son, she indicated that her son was there and

her son was then retrieved from the apartment.  Whether she was accompanied by an officer to go back to retrieve her son from another room or whether her son was inside in view and then was asked to come out, I frankly don't see that as being a meaningful distinction because there was nothing that was observed, disclosed, revealed to a law enforcement officer if one did as she testified accompanied [sic] her back to get her son out of a back bedroom.  It's not like they went and saw the defendant on the way back there.  That is not how it happened.

So I just—I don't find that to be a distinction with a difference whichever way that occurred.  But then she was asked for consent for the officers to go inside and search the apartment for someone else.  Let me interrupt that.  She then said, acknowledged to the officers that her boyfriend was in the apartment changing her story from earlier where she said that no one else was in the apartment.  Officers asked her for consent to go inside and she said they could.

They go inside and they find the defendant, they bring the defendant, I think, to the kitchen table and after he's brought out she is asked to sign her written consent form and she takes it, looks at it, ponders it and finally after reflection decides to sign it.  The officers say that no threat was made to Ms. Marlin in any way, that they did not tell her the child would be taken to the Department of Children and Family Services if she didn't cooperate, that it was not said that if she was arrested her children would be given to Department of Children and Family Services in exactly those words that she would be arrested and the children would to go Department of Children and Family Services in those words.

It was the evidence that the officers did tell her, that Officer Porter told her that her child would be taken to Department of Children and Family Services if she was arrested.  Officer Porter said he could have said that if—that was to the defendant.  Harnett said we may have told the defendant that the female might be arrested if involved in the bank robbery and that children would to go the Department of Children and Family Services.  Porter said that he could have said to the defendant that if he didn't tell what happened that Ms. Marlin could go to jail and the child to Children and Family Services.  Ms. [Marlin] testified that the officers said if you don't cooperate we are going to arrest you and call Children and Family Services, that the officer then said well, we are not going to arrest you right now, you just need to give us consent to search your house, that the officer said you might as well sign it meaning the written consent form because we'll just go ahead and get a search warrant.  And finally at the station house after the first interview had started, she said that an officer got upset and said if she lied he was going to bring in the FBI arrest her [sic] and her children would go to Children and Family Services.

Now, again to reiterate, Porter said he didn't threaten the lady in any way although he did speak very abruptly and use and [sic] that he quote was not being

nice in his demeanor and that he did portray the bad guy of the good guy bad guy routine and as I said, he specifically testified although he didn't say exactly when it happened, he did testify that he said to her that her child would be taken to Department of Children and Family Services if she was arrested.

Based on the totality of the circumstances and all of the evidence that was presented, this Court finds and determines that the officers received consent, a valid, legitimate, uncoerced consent from Ms. Marlin to go into her apartment upon which they found the defendant hiding, that that was a lawful search and it resulted in a lawful seizure. The defendant at the scene of the apartment, at the site of the apartment where a supposed coerced comment was made to him that if he didn't cooperate with him and tell them, the law enforcement officers, what happened, his girlfriend would be arrested and the child taken to Children and Family Services apparently had no effect at the scene because he didn't give any inculpatory statement at the scene at the apartment.

That when he went back to the station when he was taken to the station house and the interrogation there occurred and he was there and informed of his rights and if any inculpatory statements were then made they were sufficiently attenuated from any coercive statement at the apartment.

Regarding exigent circumstances, the officer had, in fact, and it's reasonably inferred from the evidence and I don't need an officer telling me what his or her opinion is. As a matter of fact, I reject officers' opinions saying they did this because of exigent circumstances. I don't think it is inappropriate for me to consider whether exigent circumstances existed for the officers to seek to retrieve evidence that might be subject to being destroyed when they have probable cause to believe that this is happening. That is not the basis of my decision. But it certainly is something I think I could have considered had I found that that [sic] it was not consensual.

Under the inevitable discovery doctrine, there were a couple of platoons of officers there apparently with cars surrounding the apartment complex and apartment 46 specifically at the time. They had focused their attention on to apartment forty six [sic]. While they testified at that time no one had gone to seek a search warrant it is completely reasonable to believe that had Ms. Marlin not consented to the search that the officers would have applied for a search warrant and based upon the information that I have gone over about how all this came down, would have had probable cause to obtain a search warrant in my opinion and would have—would have inevitably found the defendant in the apartment. There was no way out. While he apparently flushed the tracking unit down the toilet, he couldn't himself get flushed down the toilet and you know, the apartment was surrounded by law enforcement officers.

So, you know, the inevitable discovery doctrine might apply if the Court didn't find that consent that established [sic] and I do find consent was established. You know, it is appropriate, I think, to observe that like making laws that the actual enforcement of the laws with the defense such as an alleged robbery are not things that are easy to watch and observe and it is not done in the decorum of a courtroom. It happens on the street. It happens with a lot of noise. It happens with a lot of tension. It happens with a lot of nerves and while most everybody that I know whether they have got something to hide or not feels a certain degree of apprehension if a law enforcement officer comes up to them and begins to ask them questions and if they come to their house and begins [sic] to talk to them about a bank robbery, I suppose the question is whether or not it's unreasonable, whether or not it's unreasonable and coercive unduly coercive or whether or not it's legitimate law enforcement activity which is difficult even in the best circumstances I would suspect.

Based upon all of that, the Court does deny the motion to suppress.

(Ex. A at 139–47). The parties did not stipulate that the Fourth Amendment issue was dispositive of the case (*see id.* at 147).

On May 9, 2005, Petitioner signed a written plea agreement and sentence recommendation (Ex. A at 151–55). He agreed to enter a "straight up" nolo contendere plea, with no negotiated sentence (*id.*). One of the express terms of the plea agreement was that he understood he was giving up the right to appeal all matters (*id.* at 152). At a plea hearing the same day, the trial court asked Petitioner: "Have you had an adequate chance to go over this form and its explanation of the rights that you have and what rights you give up when you enter a plea of no contest?" (Ex. C at 244). Petitioner replied, "Yes, sir, I have." The court asked, "Are you satisfied that you understand what these things mean?" (*id.*). Petitioner responded, "Yes, sir." (*id.*). The court accepted the plea as "free, voluntary, and knowing" (*id.*). There is no indication in the plea agreement or the transcripts of the suppression hearings or plea hearing that Petitioner entered his plea with a reservation of the right to appeal the suppression issue.

Petitioner filed a counseled brief on direct appeal (Ex. D). In his initial brief, he cited a portion of the record wherein the trial court advised Petitioner he could appeal the ruling on the

motion to suppress (Ex. D at 18).[3]  Petitioner then fully briefed the issue of trial court error in denying the motion to suppress (*id.* at 20–31).  In the State's answer brief, the State argued the suppression issue was not preserved (Ex. E at 10–11).  The State further argued that even if the appellate court found the issue to be preserved, Petitioner's claim failed on the merits (*id.* at 11–18). The state appellate court summarily affirmed the judgment of conviction and sentence (Ex. G).

The undersigned will first address the waiver issue.  A voluntary and intelligent guilty plea forecloses federal collateral review of alleged constitutional errors preceding the entry of the plea. *See* Tollett v. Henderson, 411 U.S. 258, 266–67, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992).[4]  Non-jurisdictional defects that are waived by an unconditional plea of guilty include constitutional challenges that do not implicate the knowing and voluntary nature of the plea.  *See* Wilson, 962 F.2d at 997; United States v. Fairchild, 803 F.2d 1121, 1124 (11th Cir. 1986); *see also*, United States v. Broce, 488 U.S. 563, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989) (when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary); Tollett, 411 U.S. at 266–67 (holding that a guilty plea represents a break in the chain of events that preceded it in the criminal process); McMann v. Richardson, 397 U.S. 759, 770, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970) (holding that defendant who pled guilty was not entitled to federal habeas review of claim that his confession was obtained unconstitutionally); Boykin v. Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (finding a plea of guilty is a waiver of several constitutional rights, including the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to insist on a jury trial); Stano v. Dugger, 921 F.2d 1125, 1150 (11th Cir. 1991).

---

[3] That portion of the record shows that at the conclusion of the sentencing hearing, the trial court stated:

> Now you have thirty days from today within which to appeal this judgment and sentence. And what's really important, Mr. Stewart, is the appeal goes to the decision that I made on the motion to suppress.  Your lawyer can appeal my ruling on that.

(Ex. B at 193).

[4] A plea of nolo contendere is recognized as the equivalent of a guilty plea in Florida.  *See* Fla. R. App. P. 9.140(b)(2).

However, review of a guilty plea conviction based on alleged infirmities in pretrial proceedings may be entertained on federal habeas when state law permits a defendant to appeal the results of such pretrial proceedings. *See* Lefkowitz v. Newsome, 420 U.S. 283, 289, 95 S. Ct. 886, 43 L. Ed. 2d 196 (1975). This proviso does not help Petitioner in the instant case. In Florida, a defendant may not appeal from a guilty or nolo contendere plea except as follows:

> (i) Reservation of Right to Appeal. A defendant who pleads guilty or nolo contendere may expressly reserve the right to appeal a prior dispositive order of the lower tribunal, identifying with particularity the point of law being reserved.

> (ii) Appeals Otherwise Allowed. A defendant who pleads guilty or nolo contendere may otherwise directly appeal only

>> a. the lower tribunal's lack of subject matter jurisdiction;

>> b. a violation of the plea agreement, if preserved by a motion to withdraw plea;

>> c. an involuntary plea, if preserved by a motion to withdraw plea;

>> d. a sentencing error, if preserved; or

>> e. as otherwise provided by law.

Fla. R. App. P. 9.140(b)(2)(A). In the instant case, Petitioner did not expressly reserve the right to appeal the court's denial of his motion to suppress, nor did he file a motion to withdraw his plea. Therefore, state law did not permit Petitioner to appeal the result of the suppression hearing.

Petitioner's Fourth Amendment claim set out above implicates non-jurisdictional matters that preceded entry of his plea. Further, Petitioner does not challenge the knowing or voluntary nature of his plea in the instant federal habeas proceeding. Therefore, Petitioner relinquished his right to challenge the trial court's denial of the Fourth Amendment issue when he entered a knowing, voluntary, and counseled plea. Accordingly, he is not entitled to federal review of his Fourth Amendment claim. *See, e.g.*, Grimsley v. Secretary, Dep't of Corr., No. 8:10-cv-2241-T-3AEP, 2011 WL 1690034, at *6–7 (M.D. Fla. May 3, 2011) (unpublished).

Notwithstanding the waiver issue, review of Petitioner's Fourth Amendment claim is precluded under Stone v. Powell, 428 U.S. 465 (1976). Federal courts are precluded from conducting post-conviction review of a petitioner's Fourth Amendment claim of an unconstitutional

search or seizure if the state courts provided "an opportunity for full and fair litigation" of that claim. *See* Powell, 428 U.S. at 494; *see also* Bradley v. Nagle, 212 F.3d 559, 564 (11th Cir. 2000); Huynh v. King, 95 F.3d 1052, 1058 (11th Cir. 1996). This bar applies if the State has provided an opportunity for full and fair litigation of the claim "whether or not the defendant employs those processes." Huynh, 95 F.3d at 1058 (citing Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978)).[5] Additionally, this rule applies to a conviction based upon a guilty plea, as well as a conviction following a trial. *See* Stanley v. Wainwright, 604 F.2d 379, 381 (5th Cir. 1979). "In Stone, the Court reasoned that, so long as a defendant had the opportunity to present his Fourth Amendment claims to the state trial and appellate courts, the objectives of the exclusionary rule have been satisfied." Bradley, 212 F.3d at 564–65.

> For a claim to be fully and fairly considered by the state courts, where there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court. Where, however, the facts are undisputed, and there is nothing to be served by ordering a new evidentiary hearing, the full and fair consideration requirement is satisfied where the state appellate court, presented with an undisputed factual record, gives full consideration to defendant's Fourth Amendment claims.

Mincey v. Head, 206 F.3d 1106, 1126 (11th Cir. 2000) (quoting Tukes v. Dugger, 911 F.2d 508, 513–14 (11th Cir. 1990)); Caver, 577 F2d at 1192 ("'[F]ull and fair consideration' of a fourth amendment claim [includes] at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when there are facts in dispute, and full consideration by an appellate court when the facts are not in dispute."); *see also* Powell, 428 U.S. at 494 n.36.[6] Furthermore, even if a state court erred in its Fourth Amendment analysis, a federal court will not consider the merits

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

[6] The Supreme Court, in a footnote in its Powell decision, cited its earlier decision in Townsend v. Sain to elaborate on the meaning of the phrase "full and fair litigation." *See* Townsend v. Sain, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963), *overruled in part*, Keeney v. Tamayo-Reyes, 504 U.S. 1, 5, 112 S. Ct. 1715, 1717, 118 L. Ed. 2d 318 (1992). Townsend lays out certain factors for a court to consider in resolving whether an issue has been fully and fairly litigated. Among these factors are whether there was a hearing procedure available, how well the factual issues were developed, and whether the trial court's fact-findings are adequately supported by the record. *See* Townsend, 372 U.S. at 312–13.

of a Fourth Amendment claim.  *See* <u>Swicegood v. State of Alabama</u>, 577 F.2d 1322, 1324 (5th Cir. 1978).

In the present habeas petition, Petitioner does not argue that he was denied the opportunity to present facts to the trial court.  In fact, the record demonstrates he was given a full and fair opportunity to do so.  The trial court gave Petitioner an evidentiary hearing on the issue raised in the instant petition, that is, whether Ms. Marlin's consent to search the apartment was the product of coercion by law enforcement.  The factual issues were fully developed at the hearing (Ex. A at 29–80, 82–122, 123–39).  At the conclusion of the hearing, the trial court made explicit findings of fact on matters essential to the consent issue, parsing the evidence presented by both parties at some length and indicating what the police officer witnesses said versus what Ms. Marlin said.  The court's factual findings are adequately supported by the record.

Petitioner fully briefed this issue on appeal to the First DCA, and the appellate court affirmed without an indication of whether it did so on the ground of Petitioner's failure to preserve the issue, or on the ground that he failed to show trial court error.  Petitioner contends meaningful appellate review of the Fourth Amendment issue was not available, because he did not reserve the right to appeal the denial of the motion to suppress (doc. 29 at 6).  However, Petitioner's waiver of his right to seek appellate review on the suppression issue, by entering a nolo contendere plea without reserving the issue for appeal and a stipulation that the issue was dispositive, and Petitioner's failure to utilize the available channels to properly present his claim to an appellate court (for example, by seeking to set aside his nolo contendere plea) does not render appellate review unavailable such that Petitioner did not receive "full and fair consideration" of his Fourth Amendment claim.

In light of the trial court's careful consideration and explicit findings on the Fourth Amendment issue and the availability of appellate review of the Fourth Amendment issue, had Petitioner availed himself of it instead of expressly waiving it, the undersigned concludes Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claim, in satisfaction of <u>Powell</u>.  *See, e.g.*, <u>Anderson v. Crist</u>, No. 5:03-cv-00162-MP-EMT, 2006 WL 2709277, at *2, 15 (N.D. Fla. Sept. 15, 2006) (unpublished).

In light of the foregoing, federal habeas review of Petitioner's Fourth Amendment claim is unavailable.

B.       Ground Two:  "Ineffective assistance of counsel—counsel failed to call, investigate, or depose Petitioner's key eyewitness for suppression hearings."

Petitioner contends defense counsel performed ineffectively by failing to investigate and present testimony from Tre Holbrook, Petitioner's stepson, regarding the suppression issue (doc. 12 at 4; doc. 13 at 18–25).  Petitioner states Holbrook was in the apartment when Sergeant Porter entered without consent, and Holbrook could have corroborated Toni Marlin's testimony that Porter entered without consent and then coerced Ms. Marlin to consent (doc. 12 at 4; doc. 13 at 18–22). Petitioner additionally argues defense counsel failed to depose police officers who were present when Porter entered the residence, which denied Petitioner the right to effectively cross-examine the officers at the suppression hearing (doc. 12 at 4; doc. 13 at 22–24).

Respondent concedes this ineffective assistance of counsel claim was fairly presented and adjudicated in Petitioner's Rule 3.850 motion (doc. 24 at 12–13).  However, Respondent contends Petitioner's plea waived any constitutional claims based upon pre-plea events, including claims of ineffective assistance of counsel (*id.* at 13).  Respondent additionally argues notwithstanding the waiver issue, Petitioner failed to show the state court's decision was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984) (*id.* at 13–15).

As previously discussed, once a guilty plea has been entered by a criminal defendant, all non-jurisdictional defects in the proceedings prior to the plea are waived, including all claims of ineffective assistance of counsel "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary."  United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000); *see also* Franklin v. United States, 589 F.2d 192, 194–95 (5th Cir. 1979) ("By entering a knowing, voluntary, intelligent guilty plea on the advice of competent counsel, [Petitioner] has waived all non-jurisdictional complaints . . . [such as] claims regarding Miranda warnings, coerced confessions, perjury and illegal searches and seizures. . . ."); Washington v. United States, No. 10-0286-CG-C, 2010 WL 3338867 at * 15 (S.D. Ala. Aug. 5, 2010) (collecting Eleventh Circuit cases denying habeas relief on suppression-based claims of ineffective assistance of counsel and concluding that, "[b]ecause all of Washington's asserted claims of ineffective assistance of counsel relate to the

suppression issue, the denial of which has been waived . . . they have been waived by petitioner's entry of a knowing and voluntary plea. . . .").

As the Supreme Court summarized:

[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

Tollett, 411 U.S. at 267 (referencing McMann v. Richardson, 397 U.S. 759 (1970)); *see also* Lefkowitz, 420 U.S. at 288 ("[T]he general rule is that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings.").

In the instant case, Petitioner does not challenge the effectiveness of the assistance he received from counsel in deciding to plead guilty, nor does he otherwise allege his plea not was not knowingly and voluntarily entered.  Therefore, he waived his constitutional challenge to defense counsel's failure to investigate and present Tre Holbrook as a witness at the suppression hearing, and counsel's failure to depose law enforcement officers prior to the suppression hearing.  *See, e.g.*, Young v. Florida, No. 8:08-cv-707-T27TGW, 2011 WL 3875412, at *4 (M.D. Fla. Aug. 30, 2011) (unpublished) (habeas petitioner's claim that counsel was ineffective in failing to investigate, interview, and depose available witnesses was foreclosed by entry of petitioner's knowing and voluntary nolo contendere plea); Harter v. Secretary, Dep't of Corr., No. 8:08-cv-202-T-27EAJ, 2011 WL 761546, at *16 (M.D. Fla. Feb. 24, 2011) (unpublished) (habeas petitioner's ineffective assistance of counsel claims concerning matters occurring prior to entry of nolo contendere plea, rather than matters occurring contemporaneously with the plea which related to whether plea was voluntarily and intelligently made, were precluded from federal habeas review); Mikell v. United States, No. CV609-065, 2011 WL 830095, at *2–4 (S.D. Ga. Jan. 26, 2011), *Report and Recommendation Adopted by* 2011 WL 833550 (S.D. Ga. Mar. 3, 2011) (unpublished) (defendant collaterally attacking conviction did not claim he did not understand facts and elements of offense upon which charge rested; therefore, pre-plea claims of defense counsel's failure to seek suppression of evidence, investigate alibi witnesses, and the like were waived by guilty plea); Horsfall v. United

States, No. CV410-095, 2011 WL 203268, at *1–2 (S.D. Ga. Jan. 3, 2011), *Report and Recommendation Adopted by* 2011 WL 201768 (S.D. Ga. Jan. 19, 2011) (unpublished) (by pleading guilty and not arguing that defense counsel's advice undermined voluntary and intelligent character of plea, defendant waived collateral attack of conviction based upon claims that defense counsel was ineffective for failing to litigate Fourth Amendment-based suppression claims); Halscott v. Secretary, Dep't of Corr., No. 8:10-cv-921-T-33MAP, 2010 WL 4570197, at *3 (M.D. Fla. Nov. 5, 2010) (unpublished) ("Since Halscott's claim implicates non-jurisdictional matters that preceded entry of his plea (including trial errors and counsel's performance regarding pretrial evidentiary issues), Halscott relinquished his right to challenge the alleged defects by pleading nolo contendere. Halscott's contention that counsel was ineffective for failing to file an adequate pretrial suppression motion did not relate to counsel's advice regarding the plea, or otherwise materially implicate the knowing and voluntary nature of his plea."); Hart v. McDonough, No. 4:06-cv-00053-MP-MD, 2007 WL 2688516, at *9–10 (N.D. Fla. Sept. 10, 2007) (unpublished) (petitioner's knowing and voluntary no contest plea waived his antecedent non-jurisdictional claims, including pre-plea claim of ineffective assistance of counsel based upon counsel's failure to file motion to suppress, because the claim did not implicate the validity of the plea.).

Furthermore, even if Ground Two was not forfeited by virtue of Petitioner's plea, he has failed to satisfy the standard for relief under § 2254(d).

        1.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms."

Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do.'" Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ."  Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'"  *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).  "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."  Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).

To meet the prejudice prong of the Strickland standard in a plea situation, Petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process."  Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).  Often this analysis hinges upon whether eradication of the error would have led counsel to change his recommendation as to the plea, which in turn generally depends on whether the outcome of a trial would have been substantively different.  *Id.* at 59–60.  While counsel can be deemed ineffective under Strickland for failing to provide proper advice during the plea process, Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty

and would have insisted on going to trial.  *See* Diaz v. United States, 930 F.2d 832, 835 (11th Cir.

1991); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991).  A conclusory, after-the-fact statement

that Petitioner would not have pled guilty, without more, is insufficient to establish prejudice under

Strickland.  *See* Diaz, 930 F.2d at 835; *see also* Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir.

1995) (though Coulter evidenced, through his counteroffer to the state, a willingness to enter into

a plea agreement, he offered no further proof to show that he would have accepted the state's plea

offer of life without parole absent his lawyers' alleged errors; therefore, Coulter failed to establish

any prejudice stemming from counsel's alleged deficient performance); Johnson v. Duckworth, 793

F.2d 898, 902 n.3 (7th Cir. 1986).

　　　　　2.　　　Federal Review of State Court Decision

Petitioner raised this claim as Ground 1 in his Rule 3.850 motion (Ex. M at 4–8).  The state

circuit court correctly articulated the two-pronged Strickland standard as the applicable legal

standard (*id.* at 71–72).  The court adjudicated Petitioner's claim as follows:

> The record reveals that there was a factual dispute between the testimony of
> Toni Marlin, Defendant's fiancee, and the testimony of Sgt. Porter and Detective
> Harnett, regarding the initial entry into Ms. Marlin's apartment where Defendant was
> found.[FN4]  The officer both testified that when Ms. Marlin answered the door, her
> son was sitting inside within view of the door, and they asked Ms. Marlin and the
> child to step outside of the apartment.[FN5]  Ms. Marlin testified that her son was
> in his bedroom with the door shut, and that when the officers told her to get him and
> come outside, Sgt. Porter followed her into the apartment and then back outside with
> her son.[FN6]  Ms. Marlin conceded that she subsequently consented to a search of
> her apartment, although she claims that her consent was coerced.[FN7]

> The Court found that this factual dispute as to whether this initial entry
> occurred, with or without consent, was irrelevant:

> "Whether she was accompanied by an officer go to back to retrieve her son
> from another room or whether her son was inside in view and then asked to come
> out, I frankly don't see that as being a meaningful distinction because there was
> nothing that was observed, disclosed, revealed to a law enforcement officer if one did
> as she testified, accompanied her back to get her son out of the back bedroom.  It's
> not like they went and saw the defendant on the way back there.  That is not how it
> happened."[FN8]

Therefore, even if Defendant's stepson testified that Sgt. Porter entered the apartment briefly while Ms. Marlin retrieved him from his bedroom, this would not have demonstrated an illegal entry or search and would have been irrelevant to the suppression issue.  It was undisputed that no evidence was obtained as a result of the initial entry, if it occurred.  Therefore, counsel was not deficient in failing to call the stepson to testify.

Similarly, even if the other law enforcement officers who were on the scene would have testified contrary to the testimony of Sgt. Porter and Detective Harnett, that Sgt. Porter followed Ms. Marlin into the apartment initially for a moment, this would not have affected the Court's finding that the entry was irrelevant to the issue of suppression.  Therefore, counsel was not deficient in failing to call any other law enforcement officers to testify.

(Ex. M at 73–74).

Petitioner appealed the state circuit court's decision to the First DCA.  The First DCA affirmed without written opinion.

Initially, the state circuit court identified the Strickland standard as the correct legal standard applicable to Petitioner's claim.  Additionally, Petitioner has failed to rebut the state court's factual findings with clear and convincing evidence; therefore, those findings are presumed correct.  Furthermore, the court's findings are supported by the record (see Ex. M, Attachments 3, 4, 5).  Therefore, Petitioner is entitled to federal habeas relief only if he demonstrates that the state court's adjudication of the claim was unreasonable.

As previously discussed, when faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill,  633 F.3d at 1287 (citing Harrington, 131 S. Ct. at 786).  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 131 S. Ct. at 786; see also Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

"[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).  Hence, Petitioner must first make a sufficient factual showing, substantiating the proposed witness testimony.  Such evidence might be sworn affidavits or depositions from the potential witnesses stating to what they would have testified.

Petitioner failed to present, in state court or this federal proceeding, evidence of actual testimony or affidavit from Tre Holbrook or any of the law enforcement officers who Petitioner argues counsel should have investigated.  Therefore, he failed to show that counsel was deficient in failing to investigate or depose these witnesses, or a reasonable probability that the outcome of the proceedings would have been different had counsel conducted this pre-hearing investigation.  Petitioner thus has failed to establish that the state court's adjudication of his claim was contrary to or an unreasonable application of Strickland.

## IV.   CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the amended petition for writ of habeas corpus (doc. 12) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 16th day of November 2011.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**